UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **Elando Tellis**, individually and on behalf of all similarly situated persons,<br><br>     Plaintiff,<br><br>v.<br><br>**Southwest Louisiana Health Care System, Inc.** d/b/a **Lake Charles Memorial Health System**,<br><br>     Defendant. | **Civil Action No.**<br><br>PROPOSED CLASS ACTION<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff, Elando Tellis, individually and on behalf of all others similarly situated, upon personal knowledge of the facts pertaining to herself and on information and belief as to all other matters, by and through counsel, hereby brings this Class Action Complaint against Defendant, Southwest Louisiana Health Cre System, Inc. d/b/a Lake Charles Memorial Health System ("LCMHS" or "Defendant").

## NATURE OF THE ACTION

1.    In October 2022, LCMHS, a regional community healthcare system in Lake Charles, Louisiana, lost control over its patients' highly sensitive personal information in a data breach by cybercriminals (the "Data Breach" or "Breach").

2.    The Data Breach exposed the "protected health information" ("PHI")

belonging to over 269,000 patients,[1] including records on their cancer treatments, surgeries, and cosmetic procedures. That exposure disturbs patients, as they no longer control their highly sensitive medical records, cannot stop others from viewing it, and cannot prevent criminals from misusing it.

3.    What's more, the Data Breach exposed patients' "personally identifiable information" ("PII"), exposing them to an increased lifelong risk for identity theft and fraud. Indeed, the Data Breach included information patients cannot change, such as full names and Social Security numbers.

4.    LCMHS's Data Breach should not have happened because it was preventable.

5.    As a medical provider, LCMHS knows it has duties to safeguard its patients' information, affirming in its online patient privacy policy ("Privacy Policy") that "LMCH[S] is required to maintain the privacy of your health information."[2]

6.    Its patients relied on LCMHS to fulfill its duties when it agreed to seek treatment from LCMHS, and they would not have agreed to seek treatment from if LCMHS had not promised to protect their PHI and PII.

7.    Even so, LCMHS never implemented the security safeguards that it was obligated to use to protect that data.

---

[1]

https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf;jsessionid=99D1C284CB7395B03 19B510648384ECD (last accessed Jan. 16, 2023).
[2] *See*, Patient Privacy, https://www.lcmh.com/patients-visitors/patient-center/patient-privacy/ (last accessed January 14, 2023).

8.      Indeed, on information and belief, LCMHS failed to adequately train its employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over the access to patient PHI and PII (together "Personal Information"). LCMHS's negligence is evidenced by its failure to prevent, detect, or stop the Data Breach before criminals gained access to LCMHS's systems and stole the information belonging to over 269,000 patients.

9.      LCMHS's misconduct violates state and federal law and industry standard data security policies.

## THE PARTIES

10.     Plaintiff Elando Tellis is a natural person and a resident and citizen of Louisiana.

11.     Defendant, Southwest Louisiana Health Cre System, Inc. d/b/a Lake Charles Memorial Health System is a Louisiana corporation with its principal place of business at 1701 Oak Park Blvd., Lake Charles, LA 70601.

## JURISDICTION AND VENUE

12.     Jurisdiction is proper in this Court under 28 U.S.C. §1332 (diversity jurisdiction). Specifically, this Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one Class Member is a citizen of a state different from Defendant.

13.    Supplemental jurisdiction to adjudicate issues pertaining to state law is proper in this Court under 28 U.S.C. §1367.

14.    Defendant has its principal place of business in Louisiana, routinely conducts business in Louisiana, has sufficient minimum contacts in Louisiana, and has intentionally availed itself of this jurisdiction by marketing and selling products and services, and by accepting and processing payments for those products and services within Louisiana.

15.    Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant does business in this Judicial District.

## FACTUAL BACKGROUND

**A.    LCMHS Collects and Promises to Protect Patients' PHI and PII**

16.    LCMHS is a regional community healthcare system in Lake Charles, Louisiana.

17.    To operate its business, LCMHS must create, collect, and store patients' PHI and PII.

18.    As a result, LCMHS requires its patients to disclose their PHI and PII to receive LCMHS's services, including their names, Social Security numbers, dates of birth, health insurance, and other information.

19.    In so doing, LCMHS promises those patients it will protect their information under state and federal law and its internal policies.

20.    LCMHS never implemented the data security safeguards necessary to protect its patients' PHI and PII, failing to properly encrypt sensitive data, adequately train its

employees on data security, develop policies to prevent breaches, enforce those policies, follow industry standard guidelines on cybersecurity, and timely respond to data breaches and inform patients as required by law. As a result, LCMHS left patients' PHI and PII an unguarded target for theft and misuse.

21.     Prior to the Breach, Defendant was aware of its failure to implement necessary data security safeguards but failed to correct them or to disclose them (in its Privacy Policy or otherwise) to the public, including Plaintiff and Class Members.

22.     The implementation of necessary data security safeguards requires affirmative acts. Accordingly, Defendant knew or should have known that it did not take such actions and failed to implement adequate data security practices.

23.     If Plaintiff and Class Members had known of Defendant's security failures, Plaintiff and Class Members would not have entrusted their PII to Defendant.

**B.      LCMHS Violated Its Duties**

24.     On October 25, 2022, LCMHS discovered that an unauthorized party had gained access to its network (the "Data Breach").

25.     That unauthorized party had gained access to LCMHS's network between October 20 and 21. The unauthorized third party accessed and obtained files containing patient names, addresses, dates of birth, health insurance information, payment information, clinical information, and Social Security Numbers.

26.     Despite learning of the Data Breach in October, LCMHS did not begin warning its patients that their information had been compromised until December 23, 2022 (the "Notice").[3]

27.     For 60 days, LCMHS did not warn patients that it lost control over their data, meaning they had no reason to guard themselves against identity theft and fraud. This also meant that patients continued to treat with LCMHS, providing their PHI and PII to an unsecure healthcare provider and LCMHS continuing to collect revenue associated with ongoing treatment.

28.     In its Notice, LCMHS stated that "the unauthorized third party accessed or obtained certain files from our systems" during the Breach; accordingly, LCMHS admitted that it failed to properly encrypt its patients PHI and PII.[4]

29.     In its Notice, LCMHS recognized the threat its Data Breach posed to its patients. Indeed, its Notice acknowledged the "inconveniences," legitimate "concern," and risk of fraud the Breach would cause further stating that "we recommend you review the statements you receive from your healthcare providers and health insurer." [5]

30.     In other words, LCMHS encouraged its patients to spend time and resources mitigating the harm resulting from the Data Breach.

31.     LCMHS foresaw the harm that would result from the Data Breach; indeed, Plaintiff suffered identity theft and fraud following LCMHS's Data Breach.

---

[3] *See*, Notice of Cyber Security Incident, available at:
https://www.lcmh.com/cybersecurity/ (last accessed January 14, 2023).
[4] *Id.*
[5] *Id.*

### C.    Plaintiff Tellis's Experience

32.    Plaintiff Tellis is a LCMHS patient and disclosed her PHI and PII to LCMHS as a condition to receiving LCMHS's services. She is also a Data Breach victim, having received LCMHS's Data Breach notice in January 2023.

33.    Plaintiff Tellis provided her PHI and PII to LCMHS and trusted that LCMHS would use reasonable measures to protect it consistent with LCMHS's internal policies and state and federal law.

34.    Shortly after and as a result of LCMHS's Data Breach, Plaintiff Tellis suffered identity theft and fraud; harm she had no ability to mitigate due to LCMHS's delayed notice.

35.    In December 2022, Plaintiff Tellis received a suspicious call reportedly from Lending Tree regarding a loan that she had repaid years ago asking her to provide payment information and make a payment on said loan.

36.    Shortly after and as a result of the Data Breach, Plaintiff Tellis received a bill and call regarding a medical service that she did not incur.

37.    To deal with this fraud and identity theft, Plaintiff Tellis has spent time remediating it and mitigating the potential for it to happen again.

38.    Indeed, as a result of the Breach and Defendant's recommendations to remain vigilant of fraud, Plaintiff Tellis has and will spend considerable time and effort monitoring her accounts to protect himself from identity theft. Plaintiff Tellis fears for her personal financial security and uncertainty over what PII was exposed in the Data Breach.

39.    Plaintiff Tellis has and is experiencing feelings of anxiety, sleep disruption,

stress, fear, and frustration because of the Data Breach. This fear stems from the fact that her highly sensitive PHI and PII is in criminal hands, who have already shown they will misuse her information. These emotional harms go far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

40.    Shortly after and as a result of the Data Breach, Plaintiff Tellis purchased credit monitoring services, the cost of which were reasonable and necessary.

41.    Plaintiff Tellis anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. In addition, Plaintiff Tellis will continue to be at present, imminent, and continued increased risk of identity theft and fraud for years to come.

42.    Plaintiff Tellis does not recall ever learning that her information was compromised in a data breach incident, other than the Data Breach at issue in this case.

43.    Plaintiff Tellis is very careful about sharing her sensitive Private Information. Plaintiff Tellis has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source. Plaintiff Tellis stores any documents containing her Private Information in a safe and secure location or destroys the documents.

44.    Plaintiff Tellis suffers a present injury from the increased risk of fraud, identity theft, and misuse resulting from her PHI and PII being placed in the hands of criminals. Plaintiff Tellis has a continuing interest in ensuring that her PHI and PII, which is the type that cannot be changed and upon information and belief remains in LCMHS's possession, is protected and safeguarded from future breaches.

45.    LCMHS has not represented the business practices changes that have been implemented to prevent against further data breaches—even at a high level that would not jeopardize its security infrastructure.

**D.    Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft**

46.    Plaintiff and members of the proposed Class have suffered injury from the misuse of their PHI and PII, which can be directly traced to LCMHS.

47.    As a result of LCMHS's failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

a.    The loss of the opportunity to control how their PHI and PII is used;

b.    The compromise and continuing publication of their PHI and PII;

c.    Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

d.    Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

e.    Delay in receipt of tax refund monies;

f.    Unauthorized use of stolen PHI and PII; and

g.    The continued increased risk to their PHI and PII, which remains in

the possession of LCMHS and is subject to further breaches so long as LCMHS fails to undertake the appropriate measures to protect the PHI and PII in their possession.

48.     Stolen PHI and PII are one of the most valuable commodities on the criminal information black market. According to Experian—a credit-monitoring service—stolen PHI and PII can be worth up to $1,000.00 depending on the type of information obtained. Thus, criminals willingly pay money for access to PHI and PII, which enables those criminals to commit fraud and identity theft to the detriment of patients and consumers, including Plaintiff and members of the Class.

49.     The value of Plaintiff's and the proposed Class's PHI and PII on the black market is considerable. Stolen PHI and PII trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

50.     It can take victims years to spot identity or PHI and PII theft, giving criminals plenty of time to use that information for cash.

51.     One such example of criminals using PHI and PII for profit is the development of "Fullz" packages.

52.     Cyber-criminals can cross-reference criminally stolen data with data available elsewhere with an astonishingly degree of accuracy, thereby creating complete dossiers on individuals. These dossiers are known as "Fullz" packages.

53.     The development of "Fullz" packages means that stolen PHI and PII from the Data Breach can easily be used to link and identify it to Plaintiff and the proposed

Class's phone numbers, email addresses, driver's license numbers, social security numbers, and other data elements and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PHI and PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other members of the proposed Class's stolen PHI and PII is being misused, and that such misuse is fairly traceable to the Data Breach.

54.     LCMHS disclosed the PHI and PII of Plaintiff and members of the proposed Class to unauthorized third parties to use in the conduct of criminal activity. Specifically, LCMHS exposed the PHI and PII of Plaintiff and members of the proposed Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (*i.e.*, identity fraud), all using the stolen PHI and PII.

55.     LCMHS's failure to properly notify Plaintiff and members of the proposed Class of the Data Breach exacerbated Plaintiff and members of the proposed Class's injury by depriving them of the earliest ability to take appropriate measures to protect their PHI and PII and take other necessary steps to mitigate the harm caused by the Data Breach.

56.     Had LCMHS timely and properly notified Plaintiff and members of the proposed Class of the Data Breach, Plaintiff and members of the proposed Class could have taken proactive, rather than reactive, mitigating measures.

**E.    LCMHS failed to adhere to FTC guidelines.**

57.    According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as LCMHS, should employ to protect against the unlawful exposure of PHI and PII.

58.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, (the "Guidelines") which established guidelines for fundamental data security principles and practices for business. The Guidelines explain that businesses should:

    a.    protect the personal customer information that they keep;

    b.    properly dispose of personal information that is no longer needed;

    c.    encrypt information stored on computer networks;

    d.    understand their network's vulnerabilities; and

    e.    implement policies to correct security problems.

59.    The Guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

60.    The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

61.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

62.    Defendant failed to follow the Guidelines. LCMHS's failure to employ reasonable and appropriate measures to protect against unauthorized access to patients' (*i.e.*, consumers') PHI and PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

## F.    LCMHS Failed to Adhere to HIPAA

63.    HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information.[6]

64.    HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity,

---

[6] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, *inter alia*: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.

and security of PHI is properly maintained.[7]

65.    The Data Breach itself resulted from a combination of inadequacies showing LCMHS failed to comply with safeguards mandated by HIPAA. LCMHS's security failures include, but are not limited to:

a.    Failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

b.    Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

c.    Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d.    Failing to ensure compliance with HIPAA security standards by LCMHS workforce in violation of 45 C.F.R. § 164.306(a)(4);

e.    Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f.    Failing to implement policies and procedures to prevent, detect,

---

[7] *See* 45 C.F.R. § 164.306 (Security standards and General rules); 45 C.F.R. § 164.308 (Administrative safeguards); 45 C.F.R. § 164.310 (Physical safeguards); 45 C.F.R. § 164.312 (Technical safeguards).

contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g.    Failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h.    Failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i.    Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

## CLASS REPRESENTATION ALLEGATIONS

66.    Plaintiff brings this action pursuant to the provisions of Rules 23(a), (b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure, on behalf of himself and the following class/subclass (collectively, the "Class" or the "Classes"):

All individuals residing in the United States whose PHI and PII was exposed to unauthorized third parties as a result of the Data Breach, including all who were sent a notice of the Data Breach (the "Nationwide Class").

All individuals residing in the State of Louisiana whose PHI and PII was exposed to unauthorized third parties as a result of the Data Breach, including all who were sent a notice of the Data Breach (the "Louisiana Subclass").

67.    Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely

election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state, or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; members of the jury in this action; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members and staff.

68.     Also, in the alternative, Plaintiff requests additional Subclasses as necessary based on the types of PHI and PII that were compromised.

69.     Plaintiff reserves the right to amend the above definitions or to propose additional subclasses in subsequent pleadings and motions for class certification.

70.     **Numerosity**: The Class Members are so numerous that joinder of all members is impracticable. The exact number and identities of Class Members are unknown at this time but are reported to be at least the 260,000 to whom LCMHS sent notice. The identities of Class Members are ascertainable through LCMHS's records, Class Members' records, publication notice, self-identification, and other means.

71.     **Commonality:** Common questions of law and fact exist as to all Class Members. These common questions of law or fact predominate over any questions affecting only individual members of the Class. Common questions include, but are not limited to, the following:

> (a) Whether LCMHS violated state and federal laws by failing to properly store, secure, and dispose of Plaintiff's and Class Members' Personal Information;

(b) Whether LCMHS failed to employ reasonable and adequate data and cybersecurity measures in compliance with applicable state and federal regulations;

(c) Whether LCMHS acted willfully, recklessly, or negligently with regard to securing Plaintiff's and Class Members' Personal Information;

(d) How the Data Breach occurred;

(e) Whether LCMHS failed to timely notify Plaintiff and Class Members of the Data Breach;

(f) Whether Plaintiff and Class Members are entitled to restitution, damages, compensation, or other monetary relief; and

(g) Whether Plaintiff and Class Members are entitled to injunctive and declaratory relief necessary to secure their Personal Information from further intrusion, exposure, and misuse.

72.     Common sources of evidence may also be used to demonstrate LCMHS's unlawful conduct on a class-wide basis, including, but not limited to, documents and testimony about its data and cybersecurity measures (or lack thereof); testing and other methods that can prove LCMHS's data and cybersecurity systems have been or remain inadequate; documents and testimony about the source, cause, and extent of the Data Breach; and documents and testimony about any remedial efforts undertaken as a result of the Data Breach.

73.     **Typicality:** Plaintiff's claims are typical of the claims of the respective Class she seeks to represent, in that the named Plaintiff and all members of the proposed Class

have suffered similar injuries as a result of the same practices alleged herein. Plaintiff has

no interests adverse to the interests of the other members of the Class.

74.    **Adequacy:** Plaintiff will fairly and adequately protect the interests of the

Class and have retained attorneys well experienced in class actions and complex litigation

as their counsel, including cases alleging consumer protection and data privacy claims

arising from medical data breaches.

75.    **Superiority and Manageability, Fed. R. Civ. P. 23(b)(3):** Class litigation

is an appropriate method for fair and efficient adjudication of the claims involved. Class

action treatment is superior to all other available methods for the fair and efficient

adjudication of the controversy alleged herein; it will permit a large number of Class

Members to prosecute their common claims in a single forum simultaneously, efficiently,

and without the unnecessary duplication of evidence, effort, and expense that hundreds of

individual actions would require. Class action treatment will permit the adjudication of

relatively modest claims by certain Class Members, who could not individually afford to

litigate a complex claim against large corporations, like Defendant. Further, even for those

Class Members who could afford to litigate such a claim, it would still be economically

impractical and impose a burden on the courts.

76.    The nature of this action and the nature of laws available to Plaintiff and

Class Members make the use of the class action device a particularly efficient and

appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged

because Defendant would necessarily gain an unconscionable advantage since they would

be able to exploit and overwhelm the limited resources of each individual Class Member

with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

77.     The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

78.     Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

79.     Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the Private Information of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

80.     Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

81.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of

which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a) Whether Defendant owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

b) Whether Defendant breached a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

c) Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

d) Whether an implied contract existed between Defendant on the one hand, and Plaintiff and Class Members on the other, and the terms of that implied contract;

e) Whether Defendant breached the implied contract;

f) Whether Defendant adequately and accurately informed Plaintiff and Class Members that their Private Information had been compromised;

g) Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach; and

h) Whether Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendant's wrongful conduct.

## **CLAIMS FOR RELIEF**

### **COUNT I**
**Negligence**
**(On Behalf of Plaintiff and the Nationwide Class or, in the Alternative, on Behalf of Plaintiff and the Louisiana Subclass)**

82.    Plaintiff realleges paragraphs 1 through 81 above as if fully set forth herein. Plaintiff brings this claim on behalf of the Class set forth above.

83.    LCMHS had a duty to exercise reasonable care and protect and secure Plaintiff and Class Members' Personal Information. This duty exists at common law and is also codified under Federal law (*see, e.g.*, FTCA and HIPAA) and Louisiana law (*see, e.g.*, La. Rev. Stat. § 51:3071 *et seq.*) ("The Louisiana Database Security Breach Notification Law").

84.    Plaintiff and the Class are within the class of persons that the FTCA, HIPAA, and The Louisiana Database Security Breach Notification Law were intended to protect.

85.    The harm that occurred as a result of the Data Breach is the type of harm the FTCA, HIPAA, and The Louisiana Database Security Breach Notification Law were intended to guard against.

86.    Through its acts and omissions, LCMHS breached its duty to use reasonable care to protect and secure Plaintiff and Class Members' PHI and PII by employing substandard or non-existent data and cybersecurity protocols.

87.    LCMHS further breached its duties by failing to employ industry standard data and cybersecurity measures to gain compliance with those laws, including, but not limited to, proper segregation, access controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing.

88.    It was reasonably foreseeable, particularly given legal mandates governing health data protection and the growing number of data breaches of health information, that the failure to reasonably protect and secure Plaintiff and Class Members' PHI and PII

would result in an unauthorized third-party gaining access to LCMHS's networks, databases, and computers that stored or contained Plaintiff and Class Members' PHI and PII.

89.     Plaintiff and Class Members' PHI and PII constitutes personal property that was stolen due to LCMHS's negligence, resulting in harm, injury and damages to Plaintiff and Class Members.

90.     LCMHS's negligence directly and proximately caused the unauthorized access and disclosure of Plaintiff and Class Members' unencrypted PHI and PII and Plaintiff and Class Members have suffered and will continue to suffer damages as a result of LCMHS's conduct. Plaintiff and Class Members seek damages and other relief as a result of LCMHS's negligence.

91.     But for LCMHS's negligence, Plaintiff's and Class Members' PHI and PII would not have been compromised, stolen, viewed, accessed, and used by unauthorized third parties.

## COUNT II
## NEGLIGENCE PER SE
**(On Behalf of Plaintiff and the Nationwide Class or, in the Alternative, on Behalf of Plaintiff and the Louisiana Subclass)**

92.     Plaintiff realleges paragraphs 1 through 81 above as if fully set forth herein. Plaintiff brings this claim on behalf of the Class set forth above.

93.     Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private

Information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

94.    Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and Class Members PHI and PII and by not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PHI and PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

95.    Defendant's violation of Section 5 of the FTC Act is, in and of itself, evidence of Defendant's negligent data security practices.

96.    Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

97.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

98.    Defendant violated the Louisiana Database Security Breach Notification Law, La. Rev. Stat. § 51:3071 *et seq.,* by failing to use reasonable measures to protect Plaintiff's and Class Members PHI and PII, not complying with applicable industry standards, and failing to give timely and sufficient notice of the Breach to Plaintiff and the Class as described in detail herein. Defendant's conduct was particularly unreasonable

given the nature and amount of PHI and PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

99.    Defendant's violation of the Louisiana Database Security Breach Notification Law is, in and of itself, evidence of Defendant's negligent data security practices.

100.    Plaintiff and the Class are within the class of persons that the Louisiana Database Security Breach Notification Law was intended to protect.

101.    The harm that occurred as a result of the Data Breach is the type of harm the Louisiana Database Security Breach Notification Law was intended to guard against.

<u>COUNT III</u>
**Breach of Express Contract**
**(On Behalf of Plaintiff and the Nationwide Class or, in the Alternative, on Behalf of Plaintiff and the Louisiana Subclass)**

102.    Plaintiff realleges paragraphs 1 through 81 above as if fully set forth herein. Plaintiff brings this claim on behalf of the Class set forth above.

103.    LCMHS provides medical services to Plaintiff and Class Members pursuant to the terms of its contracts, which all were a party to, including agreements regarding the handling of their confidential Personal Information in accordance with LCMHS's policies, practices, and applicable law. Plaintiff is not in possession of these contracts but believe these contracts are in the possession of LCMHS. As consideration, Plaintiff and Class Members paid money to LCMHS and/or their insurers for medical services. Accordingly, Plaintiff and Class Members paid LCMHS to securely maintain and store their PHI and PII. LCMHS violated these contracts by failing to employ reasonable and adequate security

measures to secure Plaintiff's and Class Members' PHI and PII and by disclosing it for purposes not required or permitted under the contracts.

104.    Plaintiff and Class Members have been damaged by LCMHS's conduct, including by paying for data and cybersecurity protection that they did not receive, as well as by incurring the harms and injuries arising from the Data Breach now and in the future.

**COUNT IV**
**Breach of Implied Contract In Fact**
**(On Behalf of Plaintiff and the Nationwide Class or, in the Alternative, on Behalf of Plaintiff and the Louisiana Subclass)**

105.    Plaintiff realleges paragraphs 1 through 81 above as if fully set forth herein. Plaintiff brings this claim on behalf of the Class set forth above.

106.    LCMHS provides medical services to Plaintiff and Class Members. Plaintiff and Class Members also formed an implied contract with LCMHS regarding the provision of those services through their collective conduct, including by Plaintiff and Class Members paying for medical goods and services from LCMHS and by LCMHS's performance of and sale of medical goods and services, regarding the handling of their confidential PHI and PII in accordance with LCMHS's policies, practices, and applicable law. As consideration, Plaintiff and Class Members paid money to LCMHS and/or their insurers for medical services. Accordingly, Plaintiff and Class Members paid LCMHS to securely maintain and store their PHI and PII. LCMHS violated these contracts by failing to employ reasonable and adequate security measures to secure Plaintiff's and Class Members' PHI and PII and by disclosing it for purposes not required or permitted under the contracts or agreements.

107.    Plaintiff and Class Members have been damaged by LCMHS's conduct, including by paying for data and cybersecurity protection that they did not receive, as well as by incurring the harms and injuries arising from the Data Breach now and in the future.

### COUNT V
### Invasion of Privacy
**(On Behalf of Plaintiff and the Nationwide Class or, in the Alternative, on Behalf of Plaintiff and the Louisiana Subclass)**

108.    Plaintiff realleges paragraphs 1 through 81 above as if fully set forth herein. Plaintiff brings this claim on behalf of the Class set forth above.

109.    Plaintiff and Class Members maintain a privacy interest in their PHI and PII, which is private, confidential information that is also protected from disclosure by applicable laws set forth above. Plaintiff's and Class Members' PHI and PII was contained, stored, and managed electronically in LCMHS's records, computers, and databases that was intended to be secured from unauthorized access to third-parties because it contained highly sensitive, confidential matters regarding Plaintiff's and Class Members' identities, unique identification numbers, medical histories, and financial records that were only shared with LCMHS for the limited purpose of obtaining and paying for healthcare, medical goods and services. Additionally, Plaintiff's and Class Members' PHI and PII, when contained in electronic form, is highly attractive to criminals who can nefariously use their PHI and PII for fraud, identity theft, and other crimes without their knowledge and consent.

110.    LCMHS's disclosure of Plaintiff's and Class Members' PHI and PII to unauthorized third parties as a result of its intentional failure to adequately secure and

safeguard their PHI and PII is offensive to a reasonable person. LCMHS's disclosure of Plaintiff's and Class Members' PHI and PII to unauthorized third parties permitted the physical and electronic intrusion into Plaintiff's and Class Members' private quarters where their PHI and PII was stored and disclosed private facts about their health into the public domain. LCMHS's disclosure of Plaintiff's and Class Members' PHI and PII to unauthorized third parties interfered with of Plaintiff's and Class Members' privacy interest.

111.    Plaintiff and Class Members have been damaged by LCMHS's conduct, including by paying for data and cybersecurity protection that they did not receive, as well as by incurring the harms and injuries arising from the Data Breach now and in the future.

## COUNT VI
### Unjust Enrichment
**(On Behalf of Plaintiff and the Nationwide Class or, in the Alternative, on Behalf of Plaintiff and the Louisiana Subclass)**

112.    Plaintiff realleges paragraphs 1 through 81 above as if fully set forth herein. Plaintiff brings this claim on behalf of the Class set forth above.

113.    Plaintiff and Class Members conferred a benefit on LCMHS by paying for data and cybersecurity procedures to protect their PHI and PII that they did not receive.

114.    This conferral of benefit was not incidental to Plaintiff's and Class Members' treatment—Plaintiff and Class Members expected that LCMHS would ensure that their PHI and PII would remain secure and not be disclosed to unauthorized third parties. Plaintiff and Class Members would not have disclosed their PHI and PII to Defendant if they did not believe it would properly safeguard their sensitive data.

115.   LCMHS has retained the benefits of its unlawful conduct including the amounts received for data and cybersecurity practices that it did not provide. Due to LCMHS's conduct alleged herein, it would be unjust and inequitable under the circumstances for LCMHS to be permitted to retain the benefit of its wrongful conduct.

116.   Plaintiff and Class Members are entitled to full refunds, restitution and/or damages from LCMHS and/or an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by LCMHS from its wrongful conduct. If necessary, the establishment of a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation may be created.

117.   Additionally, Plaintiff and Class Members may not have an adequate remedy at law against LCMHS, and accordingly plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

## COUNT VII
**Breach of Confidence**
**(On Behalf of Plaintiff and the Nationwide Class or, in the Alternative, on Behalf of Plaintiff and the Louisiana Subclass)**

118.   Plaintiff realleges paragraphs 1 through 81 above as if fully set forth herein. Plaintiff brings this claim on behalf of the Class set forth above.

119.   At all times during Plaintiff's and Class Members' relationship with LCMHS, LCMHS was fully aware of the confidential and sensitive nature of Plaintiff's and Class Members' PHI and PII.

120.   As alleged herein and above, LCMHS's relationship with Plaintiff and Class Members was governed by terms and expectations that Plaintiff's and Class Members' PHI

and PII would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

121. Plaintiff and Class Members provided their PHI and PII to LCMHS with the explicit and implicit understandings that LCMHS would protect and not permit PHI and PII to be disseminated to any unauthorized parties.

122. Plaintiff and Class Members also provided their PHI and PII to LCMHS with the explicit and implicit understandings that LCMHS would take precautions to protect such PHI and PII from unauthorized disclosure.

123. LCMHS voluntarily received in confidence Plaintiff's and Class Members' PHI and PII with the understanding that the PHI and PII would not be disclosed or disseminated to the public or any unauthorized third parties.

124. Due to LCMHS's failure to prevent, detect, or avoid the Data Breach from occurring by, *inter alia*, following industry standard information security practices to secure Plaintiff's and Class Members' PHI and PII, Plaintiff's and Class Members' PHI and PII was disclosed and misappropriated to unauthorized third parties beyond Plaintiff's and Class Members' confidence, and without their express permission.

125. As a direct and proximate cause of LCMHS's actions and/or omissions, Plaintiff and Class Members have suffered damages.

126. But for LCMHS's disclosure of Plaintiff's and Class Members' PHI and PII in violation of the parties' understanding of confidence, their protected PHI and PII would not have been compromised, stolen, viewed, accessed, and used by unauthorized third

parties. LCMHS's Data Breach was the direct and legal cause of the theft of Plaintiff's and Class Members' protected Personal Information, as well as the resulting damages.

127.    The injury and harm Plaintiff and Class Members suffered was the reasonably foreseeable result of LCMHS's unauthorized disclosure of Plaintiff's and Class Members' PHI and PII.

128.    As a direct and proximate result of LCMHS's breaches of confidence, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the compromise, publication, and/or theft of their PHI and PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PHI and PII; (iv) lost opportunity costs associated with effort expended to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching hoe to prevent, detect, contest, and recover from medical fraud, financial fraud, and identity theft; (v) costs associated with placing freezes on credit reports; (vi) the continued risk to their PHI and PII, which remain in LCMHS's possession and is subject to further unauthorized disclosures so long as LCMHS fails to undertake appropriate and adequate measures to protect the PHI and PII of patients in its continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PHI and PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

129.    As a direct and proximate result of LCMHS's breaches of confidence, Plaintiff and Class Members have suffered and will continue to suffer injury and/or harm.

130.    But for LCMHS's breach of its fiduciary duty, Plaintiff and Class Members would not have suffered the injury and/or harm described herein.

## COUNT VIII
### Breach of Fiduciary Duty
**(On Behalf of Plaintiff and the Nationwide Class or, in the Alternative, on Behalf of Plaintiff and the Louisiana Subclass)**

131.    Plaintiff realleges paragraphs 1 through 81 above as if fully set forth herein. Plaintiff brings this claim on behalf of the Class set forth above.

132.    LCMHS has become a fiduciary to Plaintiff and Class Members, created by LCMHS's undertaking and guardianship of patient PHI and PII, to act primarily for the benefit of their patients, including Plaintiff and Class Members. This duty included the obligation to safeguard Plaintiff's and Class Members' PHI and PII and to timely notify them in the event of a data breach.

133.    Given Defendant's expertise, size, medical provider status, unique knowledge of its data security failings, and guardianship of patient PHI and PII, Defendant maintained a superior position to Plaintiff and Class Members with regards to their PHI, PII, and data security in general.

134.    Given Defendant's expertise, size, medical provider status, unique knowledge of its data security failings, and guardianship of patient PHI and PII, a special relationship was created between Defendant and Plaintiff and Class Members.

135.    LCMHS has a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of their relationship. LCMHS has breached its fiduciary duties owed to Plaintiff and Class Members by failing to:

(a) properly encrypt and otherwise protect the integrity of the system containing Plaintiff and Class Members' protected health information and other PHI and PII;

(b) timely notify and/or warn Plaintiff and Class Members of the Data Breach.

(c) ensure the confidentiality and integrity of electronic protected health information LCMHS created, received, maintained, and transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

(d) implement technical policies and procedures to limit access to only those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

(e) implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1);

(f) to identify and respond to suspected or known security incidents; mitigate to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

(g) to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 C.F.R. § 164.306(a)(2);

(h) to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the

privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

(i) ensure compliance with the HIPAA security standard rules by their workforce in violation of 45 C.F.R. § 164.306(a)(94);

(j) improperly using and disclosing protected health information that is and remains accessible to unauthorized persons in violation of 45 C.F.R. § 164.502, *et seq.*;

(k) effectively train all members of their workforce (including independent contractors) on the policies and procedures with respect to protected health information as necessary and appropriate for the members of their workforce to carry out their functions and to maintain security of protected health information in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5)

(l) design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard protected health information, in compliance with 45 C.F.R. § 164.530(c); and

(m)   otherwise failing to safeguard Plaintiff's and Class Members' PHI and PII.

136.   As a direct and proximate result of LCMHS's breaches of its fiduciary duties, Plaintiff and Class Members have suffered and will suffer injury, including, but not limited to: (i) actual identity theft; (ii) the compromise, publication, and/or theft of their PHI and PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery

from identity theft and/or unauthorized use of their PHI and PII; (iv) lost opportunity costs associated with effort attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their PHI and PII, which remains in LCMHS's possession and is subject to further unauthorized disclosures so long as LCMHS fails to undertake appropriate and adequate measures to protect patient PHI and PII in its continued possession; and (vi) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PHI and PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

137.    As a direct and proximate result of LCMHS's breach of its fiduciary duty, Plaintiff and Class Members have suffered and will continue to suffer injury and/or harm.

138.    But for LCMHS's breach of its fiduciary duty, Plaintiff and Class Members would not have suffered the injury and/or harm described herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff on her own and behalf of all others similarly situated, prays for relief as follows:

A. For an Order certifying this case as a class action pursuant to Federal Rule of Civil Procedure 23, appointing Plaintiff as Class Representative, and the undersigned as Class Counsel;

B. Awarding monetary, actual, and punitive damages and/or restitution, as appropriate, or nominal damages in the alternative;

C.  Awarding declaratory and injunctive relief as permitted by law or equity to assure that the Class has an effective remedy, including enjoining LCMHS from continuing the unlawful practices as set forth above;

D.  Awarding pre- and post-judgment interest to the extent allowed by the law;

E.  Awarding all costs, experts' fees and attorneys' fees, expenses and costs of prosecuting this action; and

F.  Such other and further relief as the Court may deem just and proper.

DATED:      February 2, 2023                Respectfully Submitted,


                                            **MORGAN & MORGAN**
                                            **COMPLEX LITIGATION GROUP**

                                            */s/*
                                            _____
                                            Rene F. Rocha
                                            Louisiana State Bar No. 34411
                                            400 Poydras St., Suite 1515
                                            New Orleans, LA 70130
                                            RRocha@ForThePeople.com
                                            P:  (954) 318-0268
                                            F:  (954) 327-3018

                                            Jean S. Martin*
                                            Ra O. Amen*
                                            201 N. Franklin Street, 7th Floor
                                            Tampa, Florida 33602
                                            (813) 559-4908
                                            JeanMartin@ForThePeople.com
                                            RAmen@ForThePeople.com

                                            *Counsel for Plaintiff and Putative Class*

*Pro Hac Vice Application forthcoming*